**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DARRELL G. MOSLEY, SR., | ) | CASE NO. 5:20-cv-1318 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Darrell G. Mosley, Sr. ("Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On June 6, 2017, Plaintiff filed his application for DIB, alleging a disability onset date of December 31, 2011. (R. 12, Transcript ("Tr.") 175-181). The application was denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 103-117). Plaintiff participated in the hearing on May 2, 2019, was represented by counsel, and testified. (Tr. 33-79). A vocational expert ("VE") also participated and testified. *Id*. On June 27, 2019, the ALJ found Plaintiff not disabled "at any time from January 19, 2011, the alleged onset date, through December 31, 2011, the date last insured [DLI]…." (Tr. 28). On April 23, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision, and the parties have completed briefing in this case. (R. 1, 15, 16 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly evaluate the totality of the evidence in the record when finding that Plaintiff was limited to no more than the sedentary level of exertion prior to his date last insured; (2) the ALJ's credibility determination was not supported by substantial evidence and violated Social Security Ruling ("SSR") 16-3p; and (3) the ALJ did not meet the Agency's burden at Step Five of the sequential evaluation. (R. 14, PageID# 1428).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. General Treatment Records

On April 14, 2010, Plaintiff underwent surgery and had a spinal cord stimulator (SCS) implanted. (Tr. 301).

---

[1] The recitation of the evidence is not intended to be exhaustive. It is limited only to those portions of the record cited by the parties in their briefs *and* also deemed relevant by the court to the assignments of error raised.

On February 18, 2011, Mosley had cervical x-rays which demonstrated hypertrophic change involving C3, C4, C5, C6, and C7 with narrowing of disc spaces at C3-C4, C4-C5, C5-C6, and C6-C7. There was encroachment of the C4-C5 and C5-C6 foramina on the left and C3-C4, C5-C6, and C6-C7 on the right. (Tr. 257). Plaintiff was referred to physical therapy for his chronic back pain secondary to intractable post laminectomy L5 radiculitis (Tr. 279, 286-288).

On February 14, 2011, Plaintiff complained of hemorrhoidal pain after running his SCS for five to six days. (Tr. 370). He reported the pain dissipated after turning off his SCS for three to four days. *Id*. He reported a sore spot on the right side of his back, and right arm paresthesias, particularly at night. *Id*.

On June 15, 2011, Plaintiff was seen for a physical therapy consultation with Mathew C. Moughiman. (Tr. 1091). It was noted that Plaintiff had recently been discharged from physical therapy after excellent results for neck pain. *Id*. Plaintiff reported only occasionally using his SCS due to hemorrhoids. *Id*. He reported any prolonged positioning seems to make his back pain worse. *Id*.

On October 4, 2011, Plaintiff was seen by physical therapy for his low back pain and lumbar radiculopathy, and received a new consult for a left wrist sprain secondary to a fall over a month earlier. (Tr. 762).

On November 3, 2011, Plaintiff complained that he had a painful spot in the lower t-spine that occurs when he runs his SCS for a few days. (Tr. 1045). Physician's assistant Patricia Filus indicated that the SCS was working, and Plaintiff had "no problem with coverage, although he sometimes has to increase the amplitude to get the pain coverage he needs. He feels no shocks or jolts, and there is no sudden loss of stimulation." *Id*. Ms. Filus observed normal lordosis, well-

healed and barely visible scars on the back, slight tenderness over the lower thoracic spine, and no palpable lump, no area of abscess or any fluid collection, and no erythema. (Tr. 1046). She assessed irritation over the SCS adaptor site. She prescribed a topical treatment for the area when it is sore. *Id*.

On November 18, 2011, physical therapy progress notes state that Plaintiff was being seen for low back pain and lumbar radiculopathy. (Tr. 1036). Plaintiff was discharged after achieving all his long term goals related to his left wrist pain, but had not demonstrated significant subjective and objective changes with respect to his back since his initial evaluation on June 15, 2011. Discharge to a home exercise program was recommended. *Id*.

On October 16, 2013, Plaintiff had thoracic spine imaging to check the lead placement of the SCS after a reported change in the SCS's coverage and intensity of stimulation. (Tr. 653). The corresponding exam findings noted "Electrode leads extend into the mid lower thoracic spinal canal with unchanged position of the leads and unchanged appearance of the connecting wires; no hardware abnormality." *Id.*

On March 12, 2014, Plaintiff had revision surgery on his SCS and a malfunctioning lead was removed and replaced. (Tr. 924).

### 2. Hearing Loss-Related Records

On May 15, 2009, Plaintiff underwent an auditory brainstem response (ABR) assessment. (Tr. 329-330). Testing demonstrated a high frequency cochlear hearing loss in the left ear, and normal results in the right ear. (Tr. 330).

On April 4, 2011, Plaintiff saw audiologist Elaine Rita Kalous for complaints of hearing loss and tinnitus. (Tr. 360-361). Plaintiff stated that "hearing loss does not effect his daily activities too much." (Tr. 360). After testing, audiologist Kalous and physician assistant

Christina F. Walls diagnosed bilateral sensorineural hearing loss. (Tr. 361, 363). They opined that Plaintiff's hearing loss and tinnitus are "at least as likely as not caused by or related to [military] in-service noise exposure." *Id*.

On November 2, 2016, nearly five years after Plaintiff's DLI (Tr. 27), audiologist Marvin W. Engelberg completed a Hearing Loss and Tinnitus Disability benefits Questionnaire for the Veterans' Administration ("VA"). (Tr. 809). Plaintiff had a speech discrimination score of 90% in the right ear and 88% in the left ear. (Tr. 810). Audiologic findings included normal results for acoustic immittance bilaterally and abnormal results for ipsilateral and contralateral acoustic reflexes bilaterally. *Id*. Plaintiff had sensorineural hearing loss (in the frequency range of 500-4000 Hz) in both ears. (Tr. 811). An asterisk next to the audiologist's findings indicates that "[t]he Veteran may have hearing loss at a level that is not considered to be a disability for VA purposes." *Id*. The provider noted that Plaintiff's "hearing loss impact[s] ordinary conditions of daily life, including ability to work" based on Plaintiff's statement that "[m]ostly I have to be looking at the person." (Tr. 812). Plaintiff also asserted that "The ringing never goes away." *Id*.

VA treatment records repeatedly note a ten percent rated disability connected to Plaintiff's tinnitus and a zero percent rated disability for impaired hearing. (Tr. 754, 755, 756, 758, 761, 766, 769, 770, 772, 773, 775).

### 3.  Medical Opinions Concerning Plaintiff's Functional Limitations

On October 6, 2011, nurse practitioner Judith A. Reed at the VA conducted a Compensation & Pension (C&P) Examination of Plaintiff. (Tr. 1053). The record notes the "Requested opinion" was to assess whether Plaintiff's "peripheral neuropathy of bilateral lower extremities at least as likely as not due to or related to his SC lumbosacral strain, with degenerative disc disease and herniated nucleus pulposis at L5-S1, s/p laminectomy, with

bulging at L2-L5?" *Id*. In a report dated October 11, 2014, nurse Reed opined Plaintiff's peripheral neuropathy or radicular symptoms were more likely the result of more recent injuries. *Id*. Nurse Reed found that Plaintiff had symptoms attributable to peripheral nerve conditions, such as intermittent (usually dull) pain of moderate severity in the left lower extremity, as well as moderate numbness and paresthesias and/or dysesthesias in the left lower extremity. (Tr. 1055-1056). She noted Plaintiff reported to physical therapy on September 7, 2011, with no radicular symptoms. (Tr. 1056). Plaintiff had normal (5/5) strength in every category, and no muscle atrophy. (Tr. 1056-1057). He had hypoactive deep tendon reflexes in every category. (Tr. 1057). Plaintiff had a normal gait. (Tr. 1058). Nurse Reed found that Plaintiff's nerve condition and/or peripheral neuropathy did *not* impact his ability to work. (Tr. 1067) (emphasis added). She also indicated that "Veteran unable to perform heavy physical work which he has done all of his life, but is able to perform sedentary work with options to change position as needed." (Tr. 1067).

On August 15, 2017, State Agency physician Elizabeth Das, M.D. reviewed Plaintiff's record, which involved a review of VA records including the results from nurse Reed's October 6, 2011 examination as well as hearing test results from 2009. (Tr. 83-86). Dr. Das determined that Plaintiff suffered from degenerative disc disease (DDD), glaucoma, and hearing loss not treated with cochlear implantation. (Tr. 84). The latter two impairments were designated as non-severe. *Id*. Dr. Das opined that the intensity, persistence, and functionally limiting effects of Plaintiff's alleged symptoms were not substantiated by the objective medical evidence alone and were inconsistent with the totality of the evidence. (Tr. 84-85). Dr. Das explained that Plaintiff's allegations of disabling DDD were inconsistent with records showing 5/5 strength, no muscle atrophy, normal sensory examinations, and a normal gait prior to the DLI. (Tr. 85). Dr. Das noted her assessment applied to December of 2011, when Plaintiff was last insured. *Id*. She

6

found Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours and stand/walk for 6 hours in an 8-hour workday; occasionally climb ramps/stairs, stoop, crouch, or crawl; and, never climb ladders, ropes, or scaffolds. (Tr. 85-86). Dr. Das found Plaintiff had no manipulative, visual, communicative, or environmental limitations. (Tr. 86).

On October 6, 2017, Plaintiff's record was reviewed by State Agency physician Venkatachala Sreenivas, M.D. (Tr. 97-98). Dr. Sreenivas's assessment echoed Dr. Das's opinions. *Id*.

**B. Relevant Hearing Testimony**

At the May 2, 2019 hearing, Plaintiff testified as follows:

- He is 5'8" tall, weighs 170 pounds, and is right-handed. (Tr. 38).

- He receives 50 percent disability benefits from the Veterans' Administration (VA). (Tr. 39). He was discharged from the military for cocaine dealing. (Tr. 41).

- He received a GED. (Tr. 40).

- He was working 20 hours per week as a warehouse worker at Goodwill and Home Goods in 2016 and 2017. (Tr. 42, 45). He stopped working at Goodwill, because being on his feet for too long would start to bother his back and cause shooting pains. The most he would lift at Home Goods was 35 pounds. (Tr. 44, 64-65).

- His back impairment has worsened over time, including a little bit since 2011. (Tr. 44).

- He had a spinal cord stimulator implanted in 2010. New batteries and leads were implanted in 2014. (Tr. 49). The stimulator was "pretty helpful" at first. (Tr. 49). It has not been as helpful since they changed the batteries and leads in 2014. (Tr. 50).

- Around 2011, he performed odd jobs for elderly church members, such as plumbing and some electrical work. (Tr. 52, 64). He also fixes vacuum cleaners. (Tr. 62-63).

- He stopped mowing other people's lawns over three years earlier, at which time he used a riding mower. He was currently using a push mower to mow his own lawn. (Tr. 53-54, 61).

- He used to do roofing work four to five years before the hearing, but he mainly supervised. (Tr. 54-55).

- He indicated that he could probably lift 30 pounds comfortably and stand/walk comfortably about two hours at a time. He can stand/walk some more after taking an extended break of at least 30 minutes. (Tr. 56, 65).

- He has had problems with alcohol abuse. (Tr. 71). He stopped drinking about two to three years earlier. (Tr. 72).

- He can take care of his activities of daily living, and does household chores. (Tr. 58). His roommate performs most of the cooking, cleaning, and grocery shopping, but he could probably do those as well if he had too, just not as often. (Tr. 59-60).

- He does not exercise, except for back exercises that he performs while lying down. (Tr. 62).

- He also reported problems with his neck and that he cannot raise his right arm higher than shoulder level. (Tr. 67). Occasionally, he has problems using his hands due to carpal tunnel and cramping. (Tr. 67-68). His right arm problems have been present for at least 15 years, but he did not know what causes the problems, speculating it has something to do with his back. (Tr. 68). He underwent physical therapy for his arm. *Id*.

The ALJ posed the following hypothetical question to the VE, during the administrative

hearing:

> Assume a hypothetical individual the claimant's age and education with the past jobs you described. Further assume that this individual can perform light work and can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. He can occasionally stoop, crouch, and crawl. He can frequently handle and finger with the bilateral upper extremities. He should avoid exposure to dangerous machinery and unprotected heights.

(Tr. 76-77). The VE testified that such an individual could not perform any of Plaintiff's past

relevant work, but could perform the following light exertional jobs: marker, Dictionary of

Occupational Titles (DOT) 209.587-034 (53,000 jobs nationally); garment sorter, DOT 222.687-

014 (250,000 jobs nationally); and classifier, DOT 361.687-014 (540,000 jobs nationally). (Tr.

77). The ALJ posed a follow-up hypothetical adding a limitation to "occasional overhead

reaching with the right upper extremity." (Tr. 77). The VE testified that the previously identified

positions would remain, as those involve less than occasional overhead reaching. (Tr. 77-78).

The VE also testified that employers tolerate being off-task no more than ten-percent of the time, and only one absence per month. (Tr. 78).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 19, 2011 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine with history of disc herniation status post remote laminectomy L5-S1 (1986). Status post spinal cord stimulator implant (2010) with revision of lead and battery replacement (2014) and reprogramming (2015), post laminectomy syndrome, left lumbar radiculopathy, sciatica, degenerative disc disease of the cervical spine, cervical radiculopathy and bilateral carpal tunnel syndrome, mild (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds. He can occasionally stoop, crouch and crawl. He can frequently handle and finger with his bilateral upper extremities. He can perform occasional overhead reaching with the right upper extremity. He should avoid exposure to dangerous machinery and unprotected heights.

6. Through the date last insured, the claimant was unable to perform any past

relevant work (20 CFR 404.1565).

7. The claimant was born on ***, 1961 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 19, 2011, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-18, 26-27).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Evaluation of the Evidence of Record and the RFC Determination**

In the first assignment of error, Plaintiff asserts that the ALJ erred by failing to evaluate properly the totality of the evidence in the record, and contends the ALJ should have found that he was restricted to sedentary work. (R. 14, PageID# 1438). The Commissioner argues that substantial evidence supports the ALJ's RFC finding, and the ALJ properly evaluated the opinion and other evidence consistent with the applicable regulations. (R. 16, PageID# 1462).

Plaintiff devotes much of his argument to identifying portions of the record that he believes would have supported a more restrictive residual functional capacity ("RFC")[2] than found by the ALJ. (R. 14, PageID# 1439-1441). However, it is not this court's role to reweigh the evidence *de novo* and arrive at its own RFC determination. The court can only review whether the ALJ's decision was supported by substantial evidence.

The Sixth Circuit recently addressed this issue, explaining:

> [The plaintiff] additionally argues that the ALJ's RFC determination was not

---

2 The RFC is an indication of an individual's work related abilities *despite* their limitations. *See* 20 C.F.R. §§ 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

supported by substantial evidence. "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). Substantial evidence in this context "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). This standard means that "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). In reviewing the ALJ's decision, we 'may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Finally, [the plaintiff] bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

*O'Brien v. Comm'r of Soc. Sec.*, 819 Fed. App'x 409, 416 (6th Cir. 2020). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009) (citations omitted).

The regulations now refer to the opinions of State Agency physicians as a "prior administrative medical finding," which is defined as "a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review … in your current claim based on their review of the evidence in your case record, such as: (i) [t]he existence and severity of your impairment(s); (ii) [t]he existence and severity of your symptoms; (iii) [s]tatements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; … (v) [i]f you are an adult, your residual functional capacity …." 20 C.F.R. §§ 404.1513(a)(5) & 416.913(a)(5). In this case, the ALJ's determination that Plaintiff could perform a limited range of light exertional work is supported by the opinions of State Agency physicians Dr. Das and Dr. Sreenivas (*i.e.* prior administrative medical findings). (Tr. 85-86, 97-98). Both assessed an exertional level of light.

*Id*. Consistent with the RFC, they further opined Plaintiff could occasionally climb ramps/stairs, stoop, crouch, and crawl, and never climb ladders, ropes, or scaffolds. *Id*. The ALJ found these opinions "persuasive based on their review of the evidence and application of limitations supported through the date last insured." (Tr. 26).

The revised regulations clarify that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). The medical opinions from medical sources[3] and prior administrative medical findings are both evaluated using the same factors. *Id*. Moreover, ALJs "are not required to adopt any prior administrative medical findings, but they must consider this evidence … because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1) & 416.913a(b)(1). Finally, there is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency

---

[3]  Acceptable medical sources are defined in 20 C.F.R. § 416.9029(a).

physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *see also Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."). Thus, an RFC determination that is based upon the medical opinions of State Agency consultants is generally supported by substantial evidence.

Plaintiff, however, takes issue with the ALJ's reliance on the State Agency opinions. (R. 14, PageID# 1448). Plaintiff contends the State Agency physicians did not have the benefit of nurse Reed's October 6, 2011 examination at the time they authored their opinions. *Id*. Plaintiff claims her opinion was not submitted until February 9, 2018. (R. 14, PageID# 1448, citing Tr. 1136). Plaintiff cites no authority for the proposition that an ALJ is barred from relying on State Agency physicians' opinions simply because a piece of evidence is submitted after they rendered their opinions. "There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed. Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole." *Williamson v. Comm'r of Soc. Sec.*, No. 1:11cv828, 2013 WL 121813 at *6 (S.D. Ohio Jan. 9, 2013), *report and recommendation adopted*, 2013 WL 1090303 (S.D. Ohio Mar. 15, 2013). Plaintiff cites an inapposite decision, *Blakeley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407-409 (6th Cir. 2009), which held that an ALJ erred by failing to adequately explain the reasons for

rejecting the opinions of three separate treating sources.[4]  The Sixth Circuit has noted that

plaintiffs have often "misconstrue[d] the Court's holding in *Blakeley v. Commissioner of Social

Security* as providing a blanket prohibition on an ALJ's adoption of a non-examining source

opinion, where that source has not reviewed the entire record." *Kepke v. Comm'r of Soc. Sec.*,

636 Fed. App'x 625, 632 (6th Cir. 2016).

More to the point, Plaintiff's assertion—that the State Agency physicians were unable to

consider nurse Reed's examination and opinion—is contrary to the record. While Exhibit 7F (Tr.

1136-1199) was submitted to the Commissioner on February 9, 2018 (Tr. 1136), nurse Reed's

October 6, 2011 examination record is contained in Exhibit 5F. (Tr. 1053-1068). Exhibit 5F was

e-filed with fax confirmation on July 7, 2017—one month before State Agency physician Dr.

Das reviewed the records on August 15, 2017. (Tr. 650, 1134). Furthermore, Dr. Das's review

explicitly identified a number of VA hospital exhibits that she reviewed, which included the

following citation that the court finds referenced nurse Reed's examination and opinion:

"10/06/11 [—] 5/5 strength, no muscle atrophy, 1+ reflexes, nml sensory, nml gait No peripheral

nerve abnormalities on exam." (Tr. 83; *see also* Tr. 1053, 1056-57, 1062). Therefore, Plaintiff's

argument that the State Agency opinions were proffered without the benefit of nurse Reed's

---

[4] After finding error with respect to the ALJ's lack of consideration of several treating
physicians, who are considered "acceptable medical sources" per the regulations, the Sixth
Circuit observed that "the ALJ's decision to accord greater weight to state agency physicians
over Blakley's treating sources was not, by itself, reversible error." *Blakley*, 581 F.3d at 409. The
Court merely explained that the decision should reflect that the ALJ at least considered the "over
300 pages of medical evidence reflect[ing] ongoing treatment and notes by Blakley's treating
sources" before giving greater weight to the non-examining physicians over the treating
physicians. *Id*. Plaintiff's reliance on *Blakley* is misplaced because Plaintiff does not identify any
*treating physician* opinions—other than Dr. Cohen's opinion based on Plaintiff's self-reports—
that post-date the state agency sources *and* were perfunctorily rejected by the ALJ.

examination is not supported by the record transcript.

The court concludes that the RFC determination was supported by substantial evidence, as it was supported by the State Agency opinions of Dr. Das and Dr. Sreenivas.

Plaintiff also takes issue with the ALJ's consideration, or lack thereof, of his VA records. (R. 14, PageID# 1441-1443). Pursuant to 20 C.F.R. §§ 404.1504 & 416.904:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs [VA] … — make disability, blindness, employability … and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, ***we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits***. *However, we will consider all of the supporting evidence* underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence.

*Id*. (effective March 27, 2017) (emphasis added). Plaintiff's brief does not demonstrate the ALJ failed to consider the only VA evidence that she was required to do so, the underlying medical records supporting the VA's determination. Plaintiff's citation to authority pre-dating the above-referenced changes in the regulations is inapposite.

Reduced to its essence, Plaintiff's claim takes issue with the weight accorded to the opinion of nurse Reed that Plaintiff "was unable to perform heavy physical work which he has done all of his life, but is able to perform sedentary work with options to change position as needed." (R. 14, PageID# 1442, citing Tr. 1067). The ALJ did not ignore this opinion, but considered it as follows:

> During a compensation and pension examination for VA benefits on October 6, 2011, Judith Reed, NP, noted that the claimant was claiming service connected benefits for radiculopathy (Ex. 5F, 405). Ms. Reed noted he had intermittent pain

as well as numbness and paresthesia, moderate in nature to his left lower extremity (Ex. 5F, 406). Strength in his upper extremities was 5/5 including grip strength and wrist extension. Knee extension was 5/5 and reflexes were 1+ (Ex. 5F, 407-408). Ms. Reed described his gait as normal and noted his condition did not impact his ability to work. However, she opined that he was unable to perform heavy physical work but could perform sedentary work with options to change position as needed (Ex. 5F, 409, 418).

\*\*\*

Ms. Reed, a nurse practioner [sic], described the claimant's gait as normal and noted his condition did not impact his ability to work during a compensation and pension examination for VA benefits on October 6, 2011. However, she opined that he was unable to perform heavy physical work but could perform sedentary work with options to change position as needed (Ex. 5F, 409, 418). The undersigned does not find Ms. Reed's opinion persuasive as it is not supported by evidence showing the claimant engaged in activities such as climbing a ladder and did not have abnormality of his gait.

(Tr. 22, 25).

The court finds no reversible error with respect to the ALJ's discussion or consideration of nurse Reed's opinion. Moreover, the pertinent regulations provide that the ALJ is not required to offer "any analysis" when it comes to issues reserved to the Commissioner. For example,

(c) Evidence that is inherently neither valuable nor persuasive. Paragraphs (c)(1) through (c)(3) apply in claims filed (see § 404.614) on or after March 27, 2017. Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, *we will not provide any analysis about how we considered such evidence* in our determination or decision, even under § 404.1520c:

(1) Decisions by other governmental agencies and nongovernmental entities. See § 404.1504.

\*\*\*

(3) *Statements on issues reserved to the Commissioner*. The statements listed in paragraphs (c)(3)(i) through (c)(3)(viii) of this section would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act, but we are responsible for making the determination or decision about whether you are disabled or blind:

18

*** 

> (v) **Statements about what your residual functional capacity is using our programmatic terms** about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about your functional abilities and limitations (see § 404.1545)

20 C.F.R. §§ 404.1520b(c) & 416.920b(c) (effective March 27, 2017) (emphasis added).

In the case at bar, nurse Reed did not opine as to how much weight Plaintiff could lift/carry, or how long he could sit, stand or walk, in an 8-hour workday. Nor does the opinion reflect that nurse Reed was familiar with the definition of the phrase sedentary work in the social security context. The court finds the ALJ adequately considered nurse Reed's opinion. To the extent Plaintiff's argument claims the ALJ erred by not discussing other evidence from the voluminous VA medical records, "the ALJ need not expressly mention every piece of evidence so long as the overall decision was supported by substantial evidence." *Noto v. Comm'r of Soc. Sec.*, 632 Fed. App'x 243, 250 (6th Cir. 2015); *accord Lower v. Comm'r of Soc. Sec.*, No. 1:19 CV 2071, 2020 WL 5215391, at *11 (N.D. Ohio Aug. 17, 2020), *report and recommendation adopted*, 2020 WL 5203487 (N.D. Ohio Sept. 1, 2020).

Finally, Plaintiff argues that the ALJ erred by failing to find he had a severe impairment related to his hearing loss, because the VA found that he had sensorineural hearing loss in both ears. (R. 14, PageID# 1442-1443, 1447). Plaintiff avers both conditions were service connected, which means the problems existed prior to his DLI. *Id*. Failing to include any limitations related to the hearing loss and/or tinnitus, Plaintiff contends, was harmful error. *Id*.

The ALJ addressed Plaintiff's hearing impairments, and designated them non-severe:

> The undersigned does not find the claimant's medically determined GERD, history of left wrist sprain, hearing loss bilaterally, suspect glaucoma, mild cataracts, internal hemorrhoids, status post banding to be severe impairments, as

they do not cause more than mild limitation on the claimant's ability to perform basic work activity.

(Tr. 18).

The Commissioner points out that VA assigned only 10% of his disability rating to tinnitus and argues Plaintiff has pointed to no evidence showing the impairment caused any work-related limitations. (R. 14, PageID# 1474, citing Tr. 754). Indeed, Plaintiff has not identified any medical opinion of record suggesting that his hearing and/or tinnitus issues would result in work-related limitations. The hearing related evidence adduced by the parties, cited above, is not voluminous. While ABR testing revealed high frequency cochlear hearing loss in the left ear and Plaintiff was subsequently diagnosed with bilateral sensorineural hearing loss (Tr. 330, 361, 363), Plaintiff cites no medical opinions or other evidence documenting that his ability to hear and communicate in a workplace environment was impacted in any meaningful way. A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6ᵗʰ Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits"); *accord Petro v. Saul*, No. 1:19-CV-00027, 2019 WL 7583659, at *6 (N.D. Ohio Dec. 20, 2019), *report and recommendation adopted sub nom. Petro v. Comm'r of Soc. Sec.*, 2020 WL 224596 (N.D. Ohio Jan. 15, 2020).

Finally, the State Agency physicians—the opinions that the ALJ found to be persuasive—both specifically found Plaintiff had *no* environmental or communicative limitations, despite their awareness of Plaintiff's claim that hearing loss was one of his symptoms. (Tr. 84, 86, 95,

98). Plaintiff's assertion that his hearing and/or tinnitus issues caused any functional limitations is speculative as it lacks citations to any supporting records.

Plaintiff's first assignment of error, therefore, is not well taken.

### 2. Credibility

In the second assignment of error, Plaintiff asserts the ALJ erred when assessing credibility and violated Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). (R. 14, PageID# 1449-1451).

"[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)*.* An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). The *Villarreal* court noted "tolerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded." *Villarreal*, 818 F.2d at 463 (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have

been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304 at *10. Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p, evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[5] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied, because "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 19).

---

[5] "The Sixth Circuit characterized SSR 16-3p [which superseded SSR 96-7p] . . . as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

After step one is satisfied, an ALJ should consider the intensity, persistence, and limiting effects of an individual's symptoms. The ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. When considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p).

The ALJ discussed several of the seven factors set forth in SSR 16-3p throughout the decision. She discussed the efficacy of several treatment modalities, including pain medication (Tr. 21), the SCS (Tr. 21-24), and physical therapy (Tr. 21-23). The ALJ also discussed some of Plaintiff's activities, providing:

> While the undersigned considered the claimant's symptoms through his date last insured, as well treatment received subsequent to his date last insured, the evidence does not support an inability to perform work within the parameters of the residual functional capacity of this decision. While undergoing a compensation and pension examination on July 14, 2014, the claimant reported that he was very active in his church and did volunteer construction for the church and church members. He occasionally needed family members to mow his grass when he had more pain but related that he was unable to find full-time employment, which he attributed to his back condition and surgical scars visible

> during employment physicals. Nonetheless, he was able to support himself with his pension, food stamps and "under the table jobs" for family, friends and church members doing "carpentry, plumbing, minor electrical, roofing and lawn care" (Ex. 5F, 266).

(Tr. 24).

Though greater discussion is always preferred, an ALJ is not required to analyze all seven factors, but should consider the relevant evidence. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"); *Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id*. at *8.

Furthermore, it bears noting that Plaintiff's brief does not meaningfully identify any procedural shortcoming in the ALJ's above explanation. Instead, Plaintiff essentially relies upon the same argument he did in his first assignment of error—that Plaintiff should have been limited to a sedentary exertional level based on the statement of nurse Reed in October of 2011. (R. 14, PageID# 1451). Plaintiff's conclusory statement—that "the ALJ failed to consider the evidence which supported [his] credibility about his symptoms"—fails to establish a need for a remand. *Id.*

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court does not find the ALJ's credibility analysis was insufficient. Thus, Plaintiff's second assignment of error is without merit.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 7, 2022

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).**